IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THEODORE G. SINGLETON,<br><br>Defendant. | **4:22CR3060**<br><br>**FINDINGS, RECOMMENDATION AND ORDER** |

Defendant moves to suppress all evidence found during or arising from a traffic stop and vehicle search conducted on December 1, 2021. ([Filing No. 40](#)). Defendant argues there was no probable cause to either conduct the stop or the warrantless search of his vehicle. For the reasons discussed below, the motion to suppress should be denied.

## FINDINGS OF FACT

On July 7, 2023, the court held an evidentiary hearing on Defendant's motion to suppress. After hearing and observing the witnesses as they testified, and reviewing the video and documentary evidence received, the undersigned magistrate judge finds the following facts are true for the purposes of determining the merits of the motion.

Trooper Brandon Sutton of the Nebraska State Patrol (NSP) is a highly trained officer who was assigned to NSP Troop B on December 1, 2021. However, on that day, he worked a day shift in the geographical area assigned to NSP Troop C. Until about noon that day, he assisted in conducting a HIDTA (High Intensity Drug Trafficking Area) Selective assignment focused on

interdicting commercial vehicles engaged in drug trafficking. Upon completing his portion of that assignment, he finished his shift by assisting Troop D with traffic patrol on Interstate 80.

At approximately 2:30 p.m., Trooper Sutton was in his patrol car and parked in an interstate median near mile marker 182. The patrol car was perpendicular to the eastbound lanes, facing south, and approximately 20 feet from the fog line of the eastbound passing (left) lane. The vehicle was equipped with a camera which faced to the front of the vehicle.

Trooper Sutton noticed an approaching SUV in the eastbound passing lane. When he initially saw it, the vehicle was travelling 74 miles per hour, but it quickly slowed to 64 miles per hour. As it did so, the vehicle momentarily drove across the center line and straddled it, with its passenger side tires approximately a foot into the driving (right) lane of the interstate's eastbound lanes. The SUV then veered back across the center line and fully into the passing lane. The driver did not use a turn signal during these movements. The weather was clear, and the roadway was dry and straight. There were no adjacent vehicles on the roadway, and no potholes, roadway defects, or debris to explain why the SUV had weaved into the driving lane and then back to the passing lane.

Based on his training and experience, Trooper Sutton believed the SUV driver may be tired, distracted, or impaired. He also believed the driver violated Nebraska law by failing to maintain the SUV within its lane and failing to signal before moving back and forth across the center line. He decided to initiate a traffic stop and pulled out of the median to catch up to the SUV.

The SUV stopped a short distance west of an interstate median near mile marker 184. At that time, NSP Trooper Michael Rice was parked in that median

and monitoring eastbound traffic. Trooper Rice noticed the traffic stop and watched to see if assistance was needed.

After the SUV pulled onto the shoulder, Trooper Sutton parked behind it, exited his patrol car, and approached the SUV's passenger side window. As he spoke to the driver through the open window, Trooper Sutton immediately noticed the strong odor of marijuana. By touching the side of his nose, he signaled to Trooper Rice that he smelled an odor and wanted backup assistance.

Defendant Theodore Singleton was the driver of the SUV. Trooper Sutton asked for Singleton's license and the vehicle registration and insurance information. Singleton produced his driver's license and a rental car agreement. Trooper Sutton noticed that the SUV was rented by a third party who was not in the vehicle, and Defendant was not listed as an authorized driver. He directed Singleton to exit the vehicle, and he conducted a pat search for weapons. By then, Trooper Rice had arrived at the stop location. When Trooper Rice approached the SUV, he also noticed the odor of marijuana. Trooper Sutton told Singleton that the officers were going to search the SUV, explaining they had probable cause to do so based on the odor of marijuana.

The SUV was searched. The officers found a semi-automatic loaded Springfield handgun and seller quantities of marijuana, heroin, cocaine, and fentanyl. Singleton was arrested, handcuffed, and transported to jail. The SUV was inventory searched at the roadside and towed away.

Following the stop, the drugs were tested by Trooper Chad Phaby at NSP's Troop C headquarters. While doing that testing, Trooper Phaby received a call from FBI Agent Brian Bartek. Bartek told Phaby that a person was willing to cooperate in providing information to law enforcement. Neither the identity of the

informant nor the subject of her information was disclosed during the video-recording of the conversation between Phaby and Bartek. The identity of the informant has been closely guarded. It was not disclosed while litigating the parallel state charges against Defendant, and it has not been disclosed in this federal litigation. A favorable plea offer was extended to Defendant in the state proceedings, but federal charges were filed before the state plea offer was accepted.

The informant did not provide information relevant to this case, and even if he or she did possess such information, when Trooper Sutton stopped Defendant's vehicle, he did not know of any tip or information indicating Singleton or the vehicle he was driving were involved in transporting illegal drugs.[1] And Troopers Sutton and Rice were not aware of any ongoing or potential investigation of the defendant or the SUV when they decided to search the vehicle.[2]

## ANALYSIS

Defendant challenges the legality of the traffic stop and the vehicle search, arguing neither was supported by probable cause. Defendant argues that any evidence found during the vehicle search or later discovered because of that search must be suppressed because it was obtained in violation of Defendant's

---

[1] Defendant is not arguing that the traffic stop is invalid because although a traffic violation occurred, Sutton's actual intent was to investigate drug activity. Rather, Defendant argues the prior tip and intent to investigate for drug trafficking is relevant to challenge the veracity of the officer's testimony that a traffic violation occurred.

[2] The officers testified that any information from the confidential informant was not related to this case. Not only was the officers' testimony on this issue highly credible, but based on the video recording, (Exhibit 216), it is apparent that Bartek promptly called Phaby after the informant agreed to speak with law enforcement. That phone call occurred while Phaby was testing the drugs seized from Defendant's vehicle; that is, over an hour after Sutton stopped the vehicle and the officers searched it. And the informant's actual interview was not scheduled to occur until the following day.

4

Fourth Amendment rights. Defendant argues his arrest arose directly from the Fourth Amendment violations, and it was therefore unlawful.

    A. Vehicle Stop

"[A]ny traffic violation, no matter how minor, is sufficient to provide an officer with probable cause" to stop a vehicle. United States v. Gonzalez-Carmona, 35 F.4th 636, 640 (8th Cir. 2022). If a traffic violation occurred, the stop is valid even if conducted as a pretext for performing a different investigation. The officer's subjective motivation for conducting the stop is irrelevant. United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007).

Here, Trooper Sutton saw Defendant drive across the center line into the driving lane, and then pull back into the passing lane for no apparent reason and without signaling. If a roadway is divided into two or more clearly marked lanes for traffic, Neb.Rev.Stat. § 60–6,139(1) requires that "[a] vehicle shall be driven as nearly as practicable within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." State v. Au, 285 Neb. 797, 802, 829 N.W.2d 695, 699–700 (2013). As explained in Au, the express language of § 60–6,139(1) requires law enforcement and the court to consider the surrounding circumstances when determining what was "practicable" at the time the vehicle moved from one lane to another. Au, 285 Neb. at 802, 829 N.W.2d at 700. In Au, the Nebraska Court held that § 60–6,139(1) was not violated where the vehicle crossed the center line as it passed a break in the road, where the pavement was uneven, while traveling around a curve. The officer in Au testified that compared to driving in a straight lane, staying within a single lane is more difficult when driving around a curve. The officer offered no evidence explaining that under the driving conditions presented in Au, it was feasible to drive the vehicle within a single lane

5

and without touching or slightly crossing the line. Under such facts, the Nebraska Court reversed the trial court, finding the State had failed to prove the defendant violated § 60–6,139(1) by driving on or over the center line of a roadway. Au further concluded a vehicle could not be legally stopped solely to investigate the condition of the driver where the trooper testified that unimpaired drivers often cross the center line while driving on a curved and uneven roadway.

Unlike the facts in Au, Singleton was driving on a straight, dry lane of the interstate during daylight, with no other vehicles near him, and no roadway defects or obstructions. Trooper Sutton testified that based on his experience it is uncommon for drivers facing similar driving conditions to weave across the center line and back. And when he does see it happen, if able, he initiates a traffic stop for both violating Nebraska law and to check if the driver is impaired.

Applying the reasoning in Au, I conclude Singleton violated Nebraska law by weaving across the center line and a foot into the driving lane and then returning to the passing lane, (Neb.Rev.Stat. § 60–6,139(1), and by doing so without using a turn signal as required when a vehicle moves right or left upon a roadway. Neb.Rev.St. § 60-6,161. There were no roadway or traffic conditions explaining why, at the time of the alleged traffic violation, Singleton veered over the center line by a foot and then back into the passing lane. Under the evidence presented, it was clearly "practicable" to drive within a single lane of traffic,[3] but Singleton did not. And he did not signal a lane change, indicating that he either briefly intended to change lanes without using his turn signal, or he moved into the driving lane and back for either no reason at all, or due to inattention, distraction, or impairment.

---

[3] A contrary finding would effectively render Neb.Rev.Stat. § 60–6,139(1) meaningless. If it was not practicable to stay within the lane under the facts presented in this case, it never is.

Based on the credible facts, I find Defendant committed a traffic violation. The traffic stop was supported by probable cause, and it did not violate the Fourth Amendment.

B. The Vehicle Search

When they approached SUV, Troopers Sutton and Rice smelled the odor of marijuana wafting through the open passenger side window. "[T]he odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." United States v. Williams, 955 F.3d 734, 737 (8th Cir. 2020). The vehicle search did not violate the Fourth Amendment.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 40) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED a telephonic conference with counsel will be held before the undersigned magistrate judge at 11:30 a.m. on August 23, 2023, to discuss setting a change of plea hearing or a trial and the related expert witness disclosure deadlines. Counsel for all parties shall use the conferencing instructions provided by the court to participate in the call.

July 24, 2023.	BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge